Estate of Charles W. Heppenstall, Sr., Deceased, Robert Bole Heppenstall and Peoples-Pittsburgh Trust Company, Executors v. Commissioner. Samuel B. Heppenstall, Sr. v. Commissioner.
Estate of Heppenstall v. Comm'r
Docket Nos. 5437, 7028. United States Tax Court
1949 Tax Ct. Memo LEXIS 282; 8 T.C.M. (CCH) 136; T.C.M. (RIA) 49034; January 31, 1949
*282 W. A. Seifert, Esq., William Wallace Booth, Esq., 747 Union Trust Bldg., Pittsburgh, Pa., A. G. Wallerstedt, C.P.A., Thomas J. McManus, Esq., and T. F. Ryan, Esq., 2610 Grant Bldg., Pittsburgh, Pa., for the petitioners. Hobby H. McCall, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings involve deficiencies in gift taxes for 1942 as follows.. Petitioner
Docket No.
Deficiency
Estate of Charles W. Heppenstall, Sr., Robert Bole
Heppenstall and Peoples-Pittsburgh Trust Company,
Executors
5437
$326,775.00
Samuel B. Heppenstall, Sr.
7028
63,412.50
The sole question in issue is the value for gift tax purposes of certain shares of stock of the Heppenstall Company. Findings of Fact Charles W. Heppenstall, Sr., and Samuel B. Heppenstall, Sr., in 1942, and until the former's death in 1945, were both residents of Pittsburgh, Pennsylvania. They filed the gift tax returns involved in these proceedings with the collector of internal revenue for the twenty-third district of Pennsylvania. Charles W. Heppenstall, Sr., died January 15, 1945. He named his son, Robert B. Heppenstall, and the Peoples-Pittsburgh *283 Trust Company executors under his will. The executors appear as the petitioners on behalf of his estate in the proceeding under Docket No. 5437. Charles W. Heppenstall, Sr., filed a gift tax return for 1942 in which he reported four separate gifts on August 29, 1942, to his wife, his daughter, and his two sons, each of 300 shares of capital stock of Heppenstall Company. Samuel B. Heppenstall, Sr., also filed a gift tax return for 1942 in which he reported gifts on December 30, 1942, of 100 shares of Heppenstall Company stock to his wife and 50 shares to each of his three sons and a daughter. The shares constituting the above gifts were all valued in the gift tax returns filed by the donors at $275 each. In his deficiency notices the respondent determined that the shares had a value at the dates of the gifts of $1,250 per share. Heppenstall Company, hereinafter sometimes referred to as the Company, is a corporation engaged in the business of manufacturing various steel and alloy products for the automotive industry and manufacturers of electrical equipment, machine tools, and other heavy machinery. The business is classified generally in the heavy forgings division of the steel *284 industry and ranks about sixth in size and production capacity. It keeps its books and makes its returns on an accrual basis and for a fiscal year ending October 31. Heppenstall Company was founded by the father of the donors in these proceedings and has always been under the control of members of the Heppenstall family. Charles W. Heppenstall, Sr., owned 2,310 of the 4,233 shares of the Company's capital stock outstanding on August 29, 1942, just before making the gifts of 1,200 shares to members of his family. Samuel B. Heppenstall, Sr., owned a total of 918 shares on December 30, 1942, before making the gifts of 300 shares to members of his family. The entire holdings of the Heppenstall family on August 29, 1942, and December 30, 1942, were as follows: Shares Held
8-29-42
12-30-42
(Before Gifts)
(After Gifts)
C. W. Heppenstall family: C. W. Heppenstall
2,310
1,110
C. W. Heppenstall, Jr. (son)
89
389
R. B. Heppenstall (son)
110
410
Rachel H. Hawkins (daughter)
88
388
Helen W. Heppenstall (wife)
95
395
Total
2,692
2,692
S. B. Heppenstall family: S. B. Heppenstall
918
618
Miriam R. Heppenstall (wife)
5
105
James M. Heppenstall (son)
2
52
Max R. Heppenstall (son)
2
52
S. B. Heppenstall, Jr. (son)
2
52
Caroline A. Heppenstall (daughter)
50
Total
929
929
C. S. Lindsay (deceased) (brother-in-law of C. W. Heppen-
stall)
50
50
Annie M. Lindsay (widow of C. S. Lindsay)
15
15
65
65
Hare and Company (nominee for half-brothers of C. W.
Heppenstall)
15
15
*285 Of the remaining shares 182 were held, on both the above dates, by 18 active employees of the Company, and 350 shares by former employees or their relatives. In addition to its Pittsburgh plant, Heppenstall Company in 1942 owned and operated a plant in Bridgeport, Connecticut, and a warehouse at Detroit, Michigan. Also, in 1942, it constructed, on a fee basis, a plant at Eddystone, Pennsylvania, with funds furnished by the Navy Department. This plant was designed to cost approximately $11,300,000 and to have a production capacity of 2,000 tons per month. About half of the production was to consist of die blocks and the other half of miscellaneous forgings and other war products. This plant was closed by the Navy Department in 1944. In its operation the Company sustained a loss of approximately $970,000, for which it never received any reimbursement from the Government. The Company's employees in 1942 numbered about 1,100 at the Pittsburgh plant and 500 at the Bridgeport plant. The following tabulation shows the net income or loss of Heppenstall Company, after state and federal income taxes, and the dividends paid to its stockholders in each of the years over the period 1899 to *286 1945, inclusive: Net Income
After Federal
Year
and State
Dividends
Ended
Income Taxes
Paid
1899
$ 18,152.95
$ 315.00
1900
20,402.30
6,536.00
1901
17,192.63
1902
3,568.36
1,650.00
1903
12,414.65
6,600.00
1904
5,128.05
6,600.00
1905
34,727.90
6,600.00
1906
69,648.18
8,800.00
1907
51,306.65
11,000.00
1908
21,361.29
11,000.00
1909
61,878.34
19,800.00
1910
99,304.93
30,085.00
1911
29,817.12
29,370.00
1912
76,554.66
26,400.00
1913
86,630.50
32,340.00
Dec. 31: 1914
42,801.00
29,370.00
1915
538,213.00
54,720.00
1916
965,440.00
250,480.00
1917
643,199.00
314,644.00
1918
316,234.00
149,700.00
1919
56,608.00
119,870.00
1920
29,674.00
60,660.00
1921
(510,968.00)
20,993.00
1922
(217,655.00)
9,338.00
1923
171,622.00
29,567.00
1924
(60,580.00)
39,184.00
1925
189,599.00
58,674.00
1926
180,638.00
66,268.00
1927
165,948.00
59,196.00
1928
717,966.00
56,725.00
1929
796,381.00
58,978.00
1930
(86,339.00)
49,130.00
1931
(305,731.00)
22,108.00
1932
(540,305.00)
751.00
1933
3,971.00
6,822.00
1934
(45,026.00)
31,066.00
Oct. 31: 1935
186,018.00
35,424.00
1936
277,723.00
52,556.00
1937
211,591.00
51,561.00
1938
(113,083.00)
12,819.00
1939
254,904.00
33,889.00
1940
1,086,447.00
74,047.00
1941
1,160,717.00
95,242.00
1942
733,591.00
95,242.00
1943
590,404.00
88,893.00
1944
615,318.00
88,893.00
1945
244,390.00
89,202.00
*287 Heppenstall Company's combined state and federal income taxes amounted to $460 in 1938; $66,702 in 1939; $312,321 in 1940; $925,941 in 1941; $2,598,733 in 1942; $2,301,088 in 1943; $466,785 in 1944, and $173,800 in 1945. The income figures for 1942 and 1943 were after renegotiation for those years in the respective amounts of $229,199 and $185,899. There were unfilled orders at the close of each of the years 1939 to 1942, inclusive, in the following amounts: Year
Ended
Pittsburgh
Bridgeport
Eddystone
Consolidated
10-31
Company
Company
Company
Total
1939
$1,112,915.50
$143,798.64
$1,256,714.14
1940
1,217,137.36
209,660.96
1,426,798.32
1941
3,176,019.37
647,664.96
3,823,684.33
1942
4,618,286.54
750,014.56
$419,833.52
5,788,134.62
Heppenstall Company, since 1935, has kept its books on an accrual basis of accounting and has used a fiscal year accounting period ending October 31. Prior to 1935 it kept its books and accounts on a calendar year basis. The ten months period referred to in the above table, October 31, 1935, reflects the change-over to the fiscal year basis. The Company's consolidated balance *288 sheets as of October 31, 1941, and October 31, 1942, show the following assets and liabilities: As at October 31, 1941
ASSETS
Current assets:
Cash
$1,316,062.24
U.S. Government securities, at cost
591,337.36
Accounts, notes and acceptances receivable, trade, less reserves
for bad debts and returned goods
766,635.66
Other accounts and notes receivable
6,862.15
Inventories
2,290,428.48
Prepaid and deferred current expense
58,863.96
$5,030,189.85
Investments, permanent: Cash surrender value of life insurance
164,530.67
Miscellaneous investments
5,927.36
170,458.03
Plant property, at cost
5,425,361.35
Less reserves for depreciation and amortization
2,993,889.69
2,431,471.66
Patents, at nominal value
1.00
TOTAL ASSETS
$7,632,120.54
LIABILITIES
Current liabilities: Accounts payable, trade
$ 605,534.00
Other current and accrued liabilities
1,195,164.14
$1,800,698.14
Reserve for contingencies
750,000.00
Capital stock and surplus: Capital stock, common, outstanding
211,650.00
Surplus, paid-in, subsidiary company
76,881.02
Surplus, earned
4,792,891.38
5,081,422.40
TOTAL LIABILITIES
$7,632,120.54
*289 As at October 31, 1942
ASSETS
Current asests: Cash
$3,296,031.80
U.S. Government securities, at cost
1,794,729.22
Accounts, notes and acceptances receivable, trade, less reserves
for bad debts and returned goods
787,049.24
Other accounts and notes receivable
14,891.39
Inventories
1,659,920.89
Prepaid and deferred current expense
73,161.03
$ 7,625,783.57
Investments, permanent: Cash surrender value of life insurance
175,694.94
Miscellaneous investments
38,841.55
214,536.49
Plant property, at cost
5,969,057.68
Less reserves for depreciation and amortization
3,426,636.58
2,542,421.10
Patents, at nominal value
1.00
TOTAL ASSETS (see facilities trust assets below)
$10,382,742.16
LIABILITIES
Current liabilities: Notes payable, banks
$ 425,000.00
Accounts payable, trade
315,658.51
Other accounts payable
160,297.81
Accrued taxes
2,783,564.71
Accrued liabilities, other
13,049.98
$ 3,697,571.01
Reserve for contingencies
850,000.00
Capital stock and surplus: Capital stock, common, outstanding
211,650.00
Surplus, paid-in, subsidiary company
76,881.02
Surplus, earned
5,546,640.13
5,835,171.15
TOTAL LIABILITIES (see facilities trust liabilities below)
$10,382,742.16
*290 FEDERAL FACILITIES TRUST ACCOUNTS
Of Subsidiary Company, Heppenstall-Eddystone Corporation
ASSETS
Cash in bank, facilities trust account
$2,902,560.29
Accounts receivable from U.S. Navy for facilities costs: Approved
$597,439.71
Pending approval
471,809.84
1,069,249.55
Funds advanced to facilities subcontractor
1,000,000.00
$ 4,971,809.84
LIABILITIES
Accounts payable for facilities costs
471,809.84
Funds advanced by U.S. Navy for facilities costs
4,500,000.00
4,971,809.84
CONTINGENT LIABILITIES
Accounts payable in suspense
$ 25,000.00
Heppenstall Company's production first reflected the effects of World War II in 1939 when it began receiving orders from the British Purchasing Commission. Its 1938 production was below normal. The Company's principal customers then were the automotive industry and the manufacturers of electrical equipment and heavy machinery of various types. In 1942, approximately 85 per cent of the Company's production was for war use. About 75 per cent was on direct contracts with agencies of the United States Government, or subcontractors thereof, and about 10 per cent with other countries. *291 Approximately 35 per cent of the Company's total production in 1942, as well as in prior years, consisted of die blocks, which are the dies used for manufacturing small forgings by the drop forging process. In 1942 the Company was the largest single manufacturer of die blocks in the world. The Company's wartime and peacetime products, and also its customers, were for the most part identical. Its wartime production capacity was increased over 100 per cent above its prewar capacity. Approximately one-half of that increase was attributable to the plants at Pittsburgh and Bridgeport, and the balance to the new plant at Eddystone. At the old plants, however, the Company lacked adequate facilities for maximum war production. Much of its equipment was old and practically obsolete. The facilities for heat treating the proportionately large quantity of alloy steel required for war uses were inadequate. All of the machinery and equipment was put to its maximum use during the war period. The management foresaw that postwar improvements would be required, such as modernizing the Pittsburgh plant and installing new improved equipment. The site of the Pittsburgh plant was in the flood district *292 and for that reason was considered undesirable. An engineering survey made in 1945 fixed the cost of completely modernizing the Pittsburgh plant at not less than $4,000,000. There has never been any trading in Heppenstall Company stock in the open market. The shares have never been listed on any stock exchange and have never been offered to or advertised to the public generally. Prior to August 29, 1942, the only sales of record were between the Company and members of the Heppenstall family or the Company's employees and their relatives. Between September 30, 1935, and August 29, 1942, the following sales of the Company stock took place: Date
Seller
Purchaser
Shares
Price
10-1- 35
C. W. Heppenstall
Heppenstall Company
20
$200.00
10-25-35
W. L. Heppenstall (half brother)
Heppenstall Company
20
200.00
4- 1-36
Edith May Anderson (wife of employee)
Heppenstall Company
5
200.00
7-21-36
F. G. Riethmiller (employee)
Heppenstall Company
20
250.00
9-22-36
Wm. J. Maharg (employee)
Heppenstall Company
5
325.00
3-30-37
Chas. H. Heppenstall (half brother)
Heppenstall Company
50
225.00
3-30-37
Hare & Co. (half brother)
Heppenstall Company
5
225.00
4-27-37
W. L. Heppenstall (half brother)
Heppenstall Company
30
225.00
3-21-39
A. P. Nayler (employee)
Heppenstall Company
40
235.00
5- 1-39
Heppenstall Company
Harry Long (employee)
5
200.00
6-26-39
Pearl Heppenstall
Heppenstall Company
15
200.00
5- -40
Heppenstall Company
Harry Long (employee)
5
200.00
5- -40
Heppenstall Company
H. G. Grim (employee)
5
200.00
*293 Further purchases and sales of the stock were made in 1943, 1944, and 1945, as follows: Date
Seller
Purchaser
Shares
Price
2-25-43
C. W. Heppenstall, Jr.hGlover & MacGregor
60
$275.00
2-25-43
R. B. Heppenstall
Glover & MacGregor
65
275.00
2-25-43
Mrs. Helen Heppenstall
Glover & MacGregor
35
275.00
2-25-43
C. W. Heppenstall
Glover & MacGregor
100
275.00
T. W. Phillips Gas &
3-23-43
Glover & MacGregor
Oil Co.
50
284.50
3-23-43
Glover & MacGregor
B. D. Phillips
100
284.50
3-23-43
Glover & MacGregor
Pa. Inv. & R. E. Corp.
50
284.50
4-12-43
R. T. Porter, Ex.
Glover & MacGregor
25
275.00
5- 3-43
Glover & MacGregor
Mrs. Emma E. Fisher
40
290.00
5-10-43
Glover & MacGregor
T. P. Johnson
25
290.00
6- 8-43
Glover & MacGregor
Harry A. Neeb
20
290.00
7-29-43
Mrs. Emma E. Fisher
Glover & MacGregor
40
280.00
8- 3-43
Glover & MacGregor
Mrs. Helen C. Hulme
15
280.00
8-16-43
Glover & MacGregor
Harry A. Neeb
5
290.00
8-20-43
Glover & MacGregor
T. W. Phillips, Jr.
20
290.00
5- 5-44
Earl McKnight, Ex.
Glover & MacGregor
5
280.00
8-16-44
Harold P. Jones
Glover & MacGregor
20
275.00
10-10-44
Glover & MacGregor
Helen B. Stuckslager
20
290.00
2-21-45
C. V. Kelly
Glover & MacGregor
5
280.00
8- 7-45
C. V. Kelly
Glover & MacGregor
5
300.00
(Cancelled 8-31-45)
8-10-45
S. B. Heppenstall
Heppenstall Company
617
425.00
8-10-45
Mrs. M. R. Heppenstall
Heppenstall Company
105
425.00
8-10-45
S. B. Heppenstall, Jr.
Heppenstall Company
52
425.00
8-10-45
J. M. Heppenstall
Heppenstall Company
52
425.00
12-12-45
B. D. Phillips
Glover & MacGregor
25
380.00
12-12-45
Glover & MacGregor
A. J. Porter
25
390.00
*294 In all the above-listed sales the firm of Glover & MacGregor, Inc., or Heppenstall Company, appears as either the purchaser or the seller. Altogether, 315 individual shares of stock were dealt in by Glover & MacGregor, Inc. This was a brokerage firm of Pittsburgh, Pennsylvania. Its president was Milton G. Hulme. He and his family own most of the firm's stock. Hulme has been a friend of the Heppenstall family for many years and is familiar, to a limited extent, with the affairs of Heppenstall Company. The sales of the Company's stock in which his firm participated were recorded in the stock transfer record kept in the Company's ledger under the notation, "M. George Hulme, (our nominee)." The term "our" was used to refer to members of the Heppenstall family. The purchasers of Heppenstall Company stock, other than members of the Heppenstall family or the Company or its employees, were friends of Hulme or selected clients of his firm. The fair market value of Heppenstall Company's stock on August 29, 1942, and on December 30, 1942, was $750 a share. Opinion LEMIRE, Judge: The sole issue in these proceedings is the fair market value of the Heppenstall Company stock on August 29, 1942, and *295 December 30, 1942, the dates of the gifts here under consideration. The gifts were reported by the donors at values computed on the basis of $275 per share for the Company's stock, while in determining the deficiencies herein the respondent has valued the stock at $1,250 per share. At the hearing, and again in their briefs, the petitioners have raised a collateral question as to the sufficiency of the pleadings. They claim that the respondent in his answers has failed to enter a specific denial, as required by Rule 14 of our Rules of Practice, of the fact alleged in the petitions that the value of the Heppenstall Company stock at the dates of the gifts was $275 per share. They contend, in effect, that they are therefore entitled to a judgment on the pledings. In other words, they say that we are required on the pleadings to determine that the value was $275 per share, as alleged in the petitions. We think that this contention is without merit. In each proceeding it is alleged in the petition in a numbered paragraph that the stock in question had a value of $275 per share at the dates of the gifts and in each answer the respondent, by correspondingly numbered paragraphs, denies *296 the allegation contained in said paragraph of the petition. We think that the answers meet the requirements of our Rules of Practice and that the pleadings adequately frame the issue of value which we must determine. The usual difficulty encountered in valuing the stock of a family corporation, such as Heppenstall Company, is magnified in the instant case by the wide disparity between the parties and the irreconcilable views of their expert witnesses. The shares were valued in the gift tax returns at $275 each and by the respondent in his deficiency notices at $1,250 each. The submission of the voluminous evidence has brought the parties no closer together than when they started. After reviewing at length the several hundred pages of expert testimony adduced at the hearings and the numerous records and tabulations prepared from the Company's books, the parties in their briefs still hold tenaciously to their original positions. The petitioners offer the testimony of three expert witnesses, all of whom were apparently well qualified. They had made considerable preparation for their testimony and were well acquainted with the history and situation of Heppenstall Company at the valuation *297 dates. They arrived at values of not less than $275 or greater than $300 per share for the stock as of August 29, 1942. There were two expert witnesses for the respondent equally well qualified. One of these witnesses arrived at the value of $900 a share for the stock and the other a value of $1,000 a share, as of August 29, 1942. Naturally the witnesses all used different approaches to their question and each gave either more or less consideration to certain factors than did the others. None of their testimony can be said to be so economically unsound, or illogical, or without a proper factual basis as not to merit consideration. Ordinarily, the price at which shares of stock are bought and sold on the open market at or about the time of the valuation date affords the best evidence of value. See ; ; ; ; . However, the evidence of record convinces us that the transfers of the Heppenstall *298 Company stock, which took place subsequent to the transfers under consideration, were not sales in a free and open market, such as might be accepted as establishing the actual market value of the shares on those dates. Whether or not those transactions were primarily for the purpose of establishing a low market value for the shares to support the valuation reported in the gift tax returns filed by the donors, as the respondent argues, we do not need to decide. However that may be, the circumstances of the transactions are such that we cannot accept them as providing any dependable measure for valuing the gifts here under consideration. The most convincing evidence of the value of Heppenstall Company's stock, we think, is to be found in the records of the Company's successful operation over a long period of time, its sound financial structure, its fairly consistent history of earnings, its liberal policy of dividend distributions, and its prospective earnings at the valuation dates. These factors point to a value considerably greater than that contended for by the petitioners. The Company was founded more than fifty years ago. Its records show a fairly steady growth and increase in *299 net worth, notwithstanding substantial losses in several years during the early twenties and again in the early thirties. It was able to survive these depression periods without serious results. It has paid dividends every year since 1890, except in 1901. These dividends averaged approximately $39,500 a year over the period 1920 to 1940. The Company's earnings amounted to approximately $256 per share in 1940, $274 per share in 1941, and $227 per share in 1942. The 1942 figure is after renegotiation for that year. The Company's net worth at October 31, 1942, was approximately $1,380 per share. Its net current assets amounted to over $900 per share. It had cash and Government securities on hand at or about the time of the first gifts of over $4,370,000, or aproximately $1,000 per share. The liquidating value, however, is not a sound measure for valuing shares in a going concern, especially minority shares. See ; ; [Dec. 10,965]. In , we said: "* * * A prospective buyer would give some *300 consideration to the book value of $145 a share. He would realize, however, that the company was a going concern, and that, even if it be assumed that the book value could be realized upon the liquidation of the corporation, there was no indication that it was to be liquidated. Moreover, he would also realize that 'minority stock interests in a "closed" corporation are usually worth much less than the proportionate share of the assets to which they attach.' * * *" In their briefs the parties give considerable discussion to the question of whether the stock should be valued as "control stock", as contended by the respondent, or as minority stock, as contended by the petitioners. The respondent argues that since control stock carries with it the right of immediate liquidation the value per share was not less than its liquidating value, which was in excess of $1,100 per share. While it may be true that a purchaser might have been willing to pay approximately the liquidating value for an interest in the Company, carrying with it the right of immediate liquidation, that is not our situation here. There was never any thought of liquidating the Company and none of the gifts carried with *301 it any such purpose or power. In making the gifts Charles W. Heppenstall, Sr., did lose, or surrender, his control over the Company, but he did not convey that control to any one of the donees or to all of them jointly. The gifts which he made, and which we must value, were of 300 shares of stock each. See , affirmed, . Giving consideration such as we think due to all the evidence of record, we have concluded that the fair market value of Heppenstall Company's stock at the dates of the gifts under consideration was $750 per share. The gifts in question should each be valued accordingly. Decisions will be entered under Rule 50.